PEORIA TARGET Co. *v.* CLEVELAND TARGET. Co. *et al.*

*(Circuit Court, N. D. Ohio. May 27, 1890.)*

1. PATENTS FOR INVENTIONS—PATENTABILITY—ANTICIPATION.

   Reissued letters patent No. 10,867 issued September 13, 1887, to N. Grier Moore, administrator of Charles F. Stock, for a trap having a throwing arm, with a pivoted extension provided with means for automatically releasing a target, describes a useful and novel invention which had not been anticipated.

2. SAME—REISSUE—MISTAKE IN ORIGINAL APPLICATION.

   The drawings, specifications, and invention clearly set forth in the application for letters patent No. 295,302, issued March 18, 1884, to Charles F. Stock, clearly covered the pivoted carrier claimed in reissued letters patent No. 10,867. The mechanism described in the original application is the same as in the reissued application. The features of the construction and the illustrations are the same in both applications. When Stock's application for the original patent was prepared he was sick, and the application contained no claim for the pivoted carrier, but as soon as the patent was issued he noticed the defect, and said he proposed to have the error corrected. He died, however, soon afterwards, without having it done. *Held,* that there was such a mistake as was properly corrected, by reissue to his administrator covering the pivoted carrier.

3. SAME—ASSIGNMENT.

   The patentee assigned a half interest in the original patent to the I. W. H. Co. After the patentee's death his administrator, M., assigned the patent to W., after joining with the I. W. H. Co. in surrendering the patent and in filing application for the reissued patent, which was granted to M., as administrator. After the reissue of the patent the I. W. H. Co. and W. conveyed all their title to complainant. *Held,* that complainant's title was good.

In Equity.

*Taylor E. Brown* and *C. C. Pool,* for complainant.

*Webster & Angell* and *Watson & Thurston,* for defendants.

RICKS, J. This suit is brought upon reissued letters patent No. 10,-867, dated September 13, 1887, issued to N. Grier Moore, administrator of Charles F. Stock. The original patent was dated March 18, 1884, and numbered 295,302, and was issued to Charles F. Stock during his life-time. In January, 1885, Stock surrendered his original letters patent, and filed an application for a reissue upon a corrected and amended specification. This application resulted in an interference proceeding involving four other parties. The conclusion of the proceedings was favorable to Stock, and a reissued patent was awarded of date and number above stated.

The first question presented by the record is as to complainant's title to the letters patent. The original patent was issued March 18, 1884, and on June 11th of the same year Stock sold and assigned an undivided one-half interest in it to the Isaac Walker Hardware Company. On October 28, 1884, Mr. Stock died, and on December 17, 1884, N. Grier Moore was appointed administrator of the estate, pursuant to authority conveyed by the county court of Peoria county, Ill. Moore, as administrator, conveyed and assigned to Edwin H. Walker this and other patents, in which transfer Mrs. Stock joined, but prior to this assignment, and on the 26th day of January, 1885, Moore, as administrator, and the Isaac Walker Hardware Company, joined in surrendering the original patent, and in filing application for the reissued patent, which was

granted as before stated.    On October 10, 1887, Edwin H. Walker and the Isaac Walker Hardware Company, by separate conveyances, transferred all their title to the complainant.    This title, on demurrer, was held good by this court, and no proof having been taken since, the title stands as approved in that decision.

The next question is whether the reissued letters patent is valid.    This device has been accepted and generally adopted, and is one of novelty and utility.    It seems to me very evident from the testimony in this record that Stock was the first one to conceive and disclose to the public the idea of a trap having a throwing arm, with a pivoted extension which, when the throwing arm was released, would swing on its own pivot and release the target, and give to it a motion and rapidity similar to that of a bird in its flight.    He conceived this device in the latter part of 1882, and communicated it to several persons, whose testimony is in the record.    He prepared several devices, and early in 1883 he tested a pivoted carrier offered in evidence.    This device was intended for throwing the form of targets then in use which had a tongue, and the carrier had holding and releasing devices for such tongue.    About the latter part of July, 1883, Stock claimed to have conceived another device, with the same kind of a carrier, designed to throw targets without tongues.    Such a device he constructed about that time, and it has been identified and offered in evidence.    This was publicly tested about the time of its construction.    The attorneys whom he employed to prepare his application for a patent, either through mistake on their own part, or from want of clear description on Stock's part, failed to state the claims in this application as broadly as the device and the invention justified. In December, 1883, the application was made and two claims were incorporated, both relating to the holding and releasing features of the invention.    The pivoted carrier was not claimed as part of the invention. It appears from the evidence that Stock was in bad health in New York when his application was prepared, and the circumstances surrounding him were such as explains his claim that his application was not carefully examined before being forwarded.    There is evidence showing that when the patent was issued he recognized its defective features, made complaints concerning it, and stated that he proposed to have the error corrected.    He did not proceed in this matter as diligently and enthusiastically as might have been expected, because he was in poor health and other causes intervened, but there is no such laches shown as should deprive him of his invention.    There was such mistake as the statute contemplates, and he took the proper means to correct it.    The proceedings in the patent-office are fully set forth.    The authorities were convinced that the original drawings and specifications described and covered, and the inventor conceived, the device of the pivoted carrier, but that through inadvertence and mistake his claims had not included it.    The authorities in the patent-office must have found that the inadvertence and mistakes set forth in the application for a reissue had been made, and that the application was made in due time, and with proper diligence.    There was evidence upon the face of the original application to show it, and

that finding this court has no disposition, if it had the authority, to review.

Is the reissued patent valid? It appears, as before stated, that the drawings, specifications, and invention clearly set forth in the application of Stock for his original letters patent fairly covered the pivoted carrier. The mechanism described in the original application is the same as in the reissued application. The features of the construction are the same in both. The illustrations are the same in both. The mechanism and the illustration in the original covered the additional claims made in the reissue. But it is said Stock did not consider that he had covered the pivoted carrier in his original patent, because before he filed his application for a reissue he filed an application for a new patent, covering this very claim, and alleged it was not disclosed by him to the public before. It does appear that he did make an application in October, 1884, but it is denied that the claims therein made were the same as those in the original or reissue. But the October application was withdrawn, and an application made for the reissue. If Stock, in the October application, did apply for the pivoted carrier claim, it does not follow that it was then disclosed for the first time. In fact it was disclosed and fairly covered in the invention described in the application for the original patent. Being the first to describe a pivoted carrier, and the first to illustrate such a device, I think the reissue was properly allowed, and that it only gave to the inventor what he had fairly disclosed in his original application. This was a useful and novel invention. It gave to the target the velocity, force, and peculiar rotary motion desired, and has brought it into general use. This invention was prior to Marqua's, and is valid, and should be sustained.

Claim 1 in the reissued patent is the same as claim 1 in the original. It combines a throwing arm and a clip for holding the target, arranged to automatically release the target as described. The main contention of defendant as to this claim is that the slot in the end of the throwing arm is a necessary element to the operation of the device, and without it the claim recites an inoperative combination. But a reference to the drawings show that Stock illustrated two forms of releasing devices, in which the slot is not necessary, but where a hinged joint made it operative. The complainant is entitled to a broad construction of this claim, and I am of the opinion that defendant's trap, exhibited by complainant, is an infringement of this claim. No infringement is alleged of claim 2. The complainant's claim 3 is for a throwing arm, with a pivoted extension or target carrier, which, by the motion and arrest of the arm, independently rotates on its pivot. It seems very plain that the defendant's trap is constructed with such a pivoted carrier. It is not used as an equivalent in any element, but is substantially the same device, and, having held this valid, I think defendant's infringement of this claim is established. Claim 4 covers a sending or throwing arm having a pivoted clip carrying the target, said arm being provided with means for automatically releasing the target at the extreme extension of the arm. This device permits the target to be re-

leased whenever the centrifugal force caused by the rapid swinging of the arm is sufficient to carry the pivoted carrier to the point at which the discharge of the target is produced. The release may take place before the carrier reaches its extreme limit. The defendant's trap contains a self-acting target-releasing device, constructed upon the same general principles set forth in the Stock patent, and is an infringement of it. A decree will be allowed sustaining the validity of the reissued patent sued upon, and finding that the defendant infringes the first, third, and fourth claims thereof, and a reference to a master for an accounting of the profits and damages resulting from such infringement.

At the October term, 1890, a petition for rehearing was allowed on account of newly-discovered evidence of prior use at Knoxville, Tenn. The case will be heard with this new evidence at February term, 1891.